IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| MARY FLOYD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CASE NO. 3:20-cv-1010-JTA |
| v. ) | |
| ) | (WO) |
| KILOLO KIJAKAZI, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Pursuant to 42 U.S.C. § 405(g), the claimant, Mary Jean Floyd ("Floyd"), brings this action to review a final decision by the Commissioner of Social Security ("Commissioner"). (Doc. No. 1.)[1] The Commissioner denied Floyd's claim for a period of disability, Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Docs. No. 9, 10.)

After careful scrutiny of the record and the briefs submitted by the parties, the Court finds that the decision of the Commissioner is due to be REVERSED and this matter be REMANDED for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

---

[1] Document numbers, as they appear on the docket sheet, are designated as "Doc. No."

I.  **PROCEDURAL HISTORY AND FACTS**

Floyd was 51 years old at the time of her alleged disability onset date of April 1, 2014. (R. 190, 198.)[2] She has a seventh-grade education. (R. 247.) Her work history consists of employment as a commercial cleaner and babysitter or child monitor. (R. 41-42, 44-46, 49, 247.) Floyd sought a disability determination due to stomach ulcers, high blood pressure, leg problems and shortness of breath. (R. 40, 246.)

On September 12, 2018, Floyd filed for a period of disability and DIB under Title II (42 U.S.C. §§ 401, *et seq.*), and filed an application for SSI under Title XVI (42 U.S.C. §§ 1389, *et seq.*). (R. 190-201.) Floyd's applications were denied initially on March 4, 2019. (R. 81-82.) Floyd requested an administrative hearing (R. 99-101), and the hearing was held on June 16, 2020. (R. 30-54.) The Administrative Law Judge ("ALJ") returned an unfavorable decision on July 2, 2020. (R. 7-28.) Thereafter, the Appeals Council denied Floyd's request for review (R. 1-6), and the hearing decision became the final decision of the Commissioner.[3] On December 10, 2020, Floyd filed this appeal. (Doc. No. 1.) This matter is ripe for review.

II.  **STANDARD OF REVIEW**

Judicial review of disability claims is limited to whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were

---

[2] Citations to the administrative record are consistent with the transcript of administrative proceedings filed in this case. (*See* Doc. No. 18.)

[3] "When, as in this case, the ALJ denies benefits and the [Appeals Council] denies review, [the court] review[s] the ALJ's decision as the Commissioner's final decision." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (citation omitted).

2

applied. 42 U.S.C. § 405(g); *Dyer v. Barnhart,* 395 F.3d 1206, 1210 (11th Cir. 2005). "The Commissioner's factual findings are conclusive" when "supported by substantial evidence." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). "Substantial evidence" is more than a mere scintilla and is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1346, 1349 (11th Cir. 1997)). Even if the Commissioner's decision is not supported by a preponderance of the evidence, the findings must be affirmed if they are supported by substantial evidence. *Id.* at 1158-59; *see also Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The court may not find new facts, reweigh evidence, or substitute its own judgment for that of the Commissioner. *Bailey v. Soc. Sec. Admin., Comm'r*, 791 F. App'x 136, 139 (11th Cir. 2019); *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004); *Dyer*, 395 F.3d at 1210. However, the Commissioner's conclusions of law are not entitled to the same deference as findings of fact and are reviewed *de novo*. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

Sentence four of 42 U.S.C. § 405(g) authorizes the district court to "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The district court may remand a case to the Commissioner for a rehearing if the court finds "either . . . the decision is not supported by substantial evidence, or . . . the Commissioner or the ALJ incorrectly applied the law relevant to the disability claim." *Jackson v. Chater*, 99 F.3d 1086, 1092 (11th Cir. 1996).

3

## III.     STANDARD FOR DETERMINING DISABILITY

An individual who files an application for Social Security DIB and SSI must prove she is disabled.[4]  *See* 20 C.F.R. § 404.1505; 20 C.F.R. § 416.920.  The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

Disability under the Act is determined under a five-step sequential evaluation process.  *See* 20 C.F.R. § 404.1520.  The evaluation is made at the hearing conducted by an administrative law judge ("ALJ").  *See Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018).  First, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity.  20 C.F.R. § 404.1520(b).  "Substantial gainful activity" is work activity that involves significant physical or mental activities.  20 C.F.R. § 404.1572(a).  If the ALJ finds that the claimant is engaged in substantial gainful activity, the claimant cannot claim disability.  20 C.F.R. § 404.1520(b).  Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of impairments that significantly limit the claimant's ability to perform basic work activities.  20 C.F.R. § 404.1520(c).  Absent such impairment, the claimant may not claim disability.  *Id.*  Third, the ALJ must determine whether the claimant meets or

---

[4] Although DIB and SSI are separate programs, the standards for determining disability are identical.  *See Patterson v. Bowen*, 799 F.2d 1455, 1456 n.1 (11th Cir. 1986); *Miles v. Soc. Sec. Admin., Comm'r*, 469 F. App'x 743, 744 (11th Cir. 2012).

medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). If such criteria are met, then the claimant is declared disabled. 20 C.F.R. § 404.1520(d).

If the claimant has failed to establish that she is disabled at the third step, the ALJ may still find disability under the next two steps of the analysis. At the fourth step, the ALJ must determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite her impairments. 20 C.F.R. § 404.1520(e). In assessing a claimant's RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.' " Social Security Ruling ("SSR") 96-8P, 1996 WL 374184 at *5; *see also Pupo v. Comm'r, Soc. Sec. Admin.*, 17 F.4th 1054, 1064 (11th Cir. 2021) (citing *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268 (11th Cir. 2019) (per curiam)); *Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir. 1990) (stating that "the ALJ must consider a claimant's impairments in combination") (citing 20 C.F.R. § 404.1545; *Reeves v. Heckler*, 734 F.2d 519, 525 (11th Cir. 1984)).

The ALJ must determine whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(f). If it is determined that the claimant is capable of performing past relevant work, then the claimant is not disabled. 20 C.F.R. § 404.1560(b)(3). If the ALJ finds that the claimant is unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(g)(1). In this final analytical step, the ALJ must decide whether the claimant is able to perform any other relevant work corresponding with her RFC, age, education, and work experience. 20 C.F.R. § 404.1560(c). Here, the burden of proof shifts from the claimant to the ALJ in

proving the existence of a significant number of jobs in the national economy that the claimant can perform given her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

## IV. ADMINISTRATIVE DECISION

Within the structure of the sequential evaluation process, the ALJ in this case found that Floyd met the insured status requirements of the Social Security Act through June 30, 2015. (R. 11, 13.) The ALJ also found that Floyd had not engaged in substantial gainful activity since April 1, 2014, the alleged onset date. (R. 13.)

At step two, the ALJ found that Floyd did not have a severe impairment from the alleged onset date of April 1, 2014, through the date last insured for DIB, June 30, 2015.[5] (R. 14.) The ALJ found that Floyd had medically determinable impairments of alcohol abuse and mild pancreatitis on April 3, 2015. (R. 14.) However, the ALJ determined that "the evidence does not show significant limitations related to these diagnosed impairments during [the] period relevant to [Floyd's] Title II claim, and no evidence the pancreatitis met the twelve-month durational requirement or resulted in more than minimal limitations." (R. 14.) Thus, the ALJ denied Floyd's DIB claim, stating

> [i]n reaching the conclusion that [Floyd] did not have a severe impairment or combination of impairments that significantly limited the ability to perform basic work activities, the undersigned has considered all symptoms and the

---

[5] To be eligible for DIB, a claimant must prove she became disabled prior to the expiration of her disability insured status. *See* 42 U.S.C. §§ 416(i)(3), 423(a), (c); 20 C.F.R. §§ 404.101, 404.130, 404.131; *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). Floyd's disability insured status expired on June 30, 2015; thus, she had to prove she was disabled on or before that date to be eligible for DIB. The relevant period for her SSI application is the month in which she filed her SSI application through the date of the ALJ's decision. *See* 20 C.F.R. §§ 416.330, 416.335; *Moore*, 405 F.3d at 1211 (explaining SSI appeal "require[d] a showing of disability between [claimant's SSI application date] and the date of the ALJ's decision").

6

extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 CFR 404.1529.

(R. 13-14.)  Notwithstanding, the ALJ continued with the five-step analysis for Floyd's SSI claim.  (R. 14.)

The ALJ found Floyd had the following severe impairments which significantly limit her ability to perform basic work activities: degenerative joint disease of the right knee and patella alta.  (R. 14.)  The ALJ also found that Floyd had several non-severe impairments, stating

> [t]he medical evidence of record also establishes alcohol intoxication, chronic alcohol abuse, hypertension, poor detention, headaches, GERD, history of syncope, intermittent palpitations, dyspnea on exertion, history of drug abuse, systematic inflammatory response syndrome, anion gap and lactic acidosis, escherichia coli urinary tract infection, exudative esophageal candidiasis, hypokalemia, transaminitis with hyperbilirubinemia due to alcohol abuse, gastrointestinal bleed with hematemesis and mild intellectual disability, as medically determinable impairments.  However, the record does not establish that these impairments have met the durational requirement, are uncontrolled despite medication or result in more than a minimal effect on [Floyd's] ability to perform basic work activities.

(R. 14-15.)  The ALJ specifically discussed the record evidence for each impairment and explained that Floyd's mental impairment "does not cause more than minimal limitation in [her] ability to perform basic mental work activities and is therefore non-severe."  (R. 16.)

As to her mental impairment, the ALJ considered a mental examination of Floyd during a regular medical examination on May 22, 2019, where it was noted that Floyd generally had "below average intelligence."  (R. 16.)  The ALJ also considered a psychological evaluation performed on April 30, 2020, which included an examination of Floyd and intelligence testing that yielded a full-scale IQ score of 61.  (R. 16.)  Floyd was diagnosed to have a mild intellectual disability. (R. 16.)  The ALJ further considered the

four areas of mental functioning required for evaluating mental disorders and found that Floyd's mental impairment did not cause at least a moderate limitation in one of the "Paragraph B" criteria. (R. 17-18.)  The ALJ rejected the opinion in the April 30, 2020 psychological evaluation that Floyd would have a marked level of impairment in the four areas of mental functioning, explaining

> [t]his opinion was based on a one-time examination of [Floyd] and is not well supported by the objective clinical findings from the examination . . . [and] [t]he opinion is not consistent with the other clinical findings of record or with [Floyd's] level of activity, including performing semiskilled work.

(R. 18.)  Therefore, the ALJ found that Floyd's medically determinable mental impairment was "not severe in nature." (R. 18.)  Consequently, the ALJ concluded that Floyd does not have an impairment or combination of impairments that meet or medically equal the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1.  (R. 19.)

After consideration of the entire record, the ALJ determined that Floyd retains the RFC to perform medium work[6] as defined in 20 C.F.R. § 404.1567(c), except Floyd "could have frequent balancing, stooping, crouching, crawling, kneeling and climbing on ramps and stairs, but never on ladders, ropes or scaffolds." (R. 20.)  The ALJ also found that Floyd "is limited to frequent exposure to hazards, including moving machinery and unprotected heights." (R. 20.)  The ALJ explained that he considered "all of [Floyd's]

---

[6] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c).

medically determinable impairments, including those that are not severe, when assessing [her] [RFC]." (R. 18.)

The ALJ explicitly considered Floyd's medical records and testimony and found that her "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." (R. 21.) In accordance with the RFC, the ALJ concluded Floyd is capable of performing past relevant work as a commercial cleaner and child monitor. (R. 23.) Therefore, the ALJ found that Floyd had not been under a disability from April 1, 2014, through the date of the decision. (R. 24.) The ALJ concluded that based on the application for a period of disability and SSI filed on September 12, 2018, Floyd is not disabled under sections 216(i) and 223(d) of the Social Security Act. (*Id.*)

## V.   DISCUSSION

Floyd raises two issues on appeal. First, Floyd argues the ALJ failed to properly consider her mild intellectual disability. (Doc. No. 14 at 1.) Second, Floyd argues that the ALJ's RFC finding was in error. (*Id.*) Upon a thorough review of the record and the parties' submissions, the Court finds that Floyd's first argument warrants reversal and remand for further proceedings.

### A.   Mild Intellectual Disability

Floyd contends the ALJ failed to properly consider her mild intellectual disability when the ALJ decided that she did not have a severe impairment prior to the date last insured for her DIB claim. Floyd also contends the ALJ improperly held her to a higher

9

standard than the law requires when the ALJ found her mild intellectual disability was non-severe for her SSI claim. Finally, Floyd contends the ALJ failed to properly evaluate her mild intellectual disability in evaluating her RFC.

The Commissioner argues in response that Floyd failed to allege disability related to her mild intellectual disability in her DIB application and failed to establish it as a severe impairment. The Commissioner also argues that Floyd failed to show her mild intellectual disability was a severe impairment in relation to her SSI application. The Commissioner further argues that the ALJ was not required to include limitations in the RFC based on the existence of an impairment alone.

The Court recites the applicable law for intellectual disability below as stated succinctly by another district court.

> To meet Listing 12.05 for intellectual disability, "a claimant must at least (1) have significantly subaverage general intellectual functioning; (2) have deficits in adaptive behavior; and (3) have manifested deficits in adaptive behavior before age 22." *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). These requirements are referred to as the Listing's "diagnostic criteria." *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00 ("Listing 12.05 contains an introductory paragraph with the diagnostic description for [intellectual disability].") In addition to satisfying the diagnostic criteria, a claimant must meet one of the four severity requirements in paragraphs A through D of the listing. *Davis v. Berryhill*, No. 16-81872-CIV, 2017 WL 7796054, at *2 (S.D. Fla. Aug. 3, 2017); *see id.* § 12.05. Under paragraph C, a claimant must show that she has both "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05. Under paragraph D, a claimant must show that she has both "[a] valid verbal, performance, or full scale IQ of 60 through 70 resulting in at least two of the following: 1. Marked restrictions of activities of daily living; or 2. Marked difficulties in maintaining social functional; or 3. Marked difficulties in maintaining concentration, persistence, or pace; or 4. Repeated episodes of decompensation, each of an extended duration ..." *Id.*

*Iacovetta v. Saul*, No. 20-80786-CIV, 2021 WL 3230381, at *9 (S.D. Fla. July 6, 2021), *report and recommendation adopted*, No. 20-80786, 2021 WL 3211994 (S.D. Fla. July 29, 2021).

The Eleventh Circuit has found "that a claimant meets the criteria for presumptive disability under Listing 12.05(C) when the claimant presents a valid IQ score of 60 to 70 and evidence of additional mental or physical impairment." *Hodges v. Barnhart*, 276 F. 3d 1265, 1269 (11th Cir. 2001) (citing *Lowery v. Sullivan*, 979 F.2d 835, 838 (11th Cir. 1992)). However, a claimant is not required to present evidence that she manifested deficits in adaptive functioning prior to age 22 if she presents evidence of low IQ test results after age 22. *Id*. at 1266. The Eleventh Circuit recognizes a rebuttable presumption that IQ remains constant throughout life. *Siron v. Comm'r of Soc. Sec.*, 757 F. App'x 831, 833 (11th Cir. 2018) (citing *Hodges*, 276 F.3d at 1268–69). *See Jones v. Astrue*, 494 F. Supp. 2d 1284, 1287 (N.D. Ala. 2007) ( "[a] valid I.Q. test meeting the Listing criteria creates a rebuttable presumption that the condition manifested itself before age twenty-two") (citing *Hodges*, 276 F.3d at 1268–69). "The requirement that [an intellectual disability] or low I.Q. began prior to age 22 is met when nothing in the record reflects an incident in which the claimant suddenly became [intellectually disabled]." *Durham v. Apfel*, 34 F. Supp. 2d 1373, 1381 (N.D. Ga. 1998) (citing *Gant v. Sullivan*, 773 F. Supp. 376, 382 (S.D. Fla. 1991)). "Failure to address the validity of the [IQ] score is an incorrect application of the law." *Leslie v. Colvin*, 196 F. Supp. 3d 1248, 1255 (N.D. Ala. 2016) (citing *Lowry*, 979 F 2d at 839); *Thomas v. Barnhart*, 2004 WL 3366150, at *2 (11th Cir. Dec. 7, 2004) ("It is therefore critical that an ALJ specifically address and resolve the validity of an IQ score;

if the IQ score is valid and meets or equals the criteria of a listed impairment, the ALJ can go no further.").

In a record dated March 1, 2019, state agency mental consultant Robert Estock, M.D. ("Dr. Estock"), opined there was insufficient evidence to evaluate Floyd's claim. (R. 63.) Dr. Estock completed a Psychiatric Review Technique assessment for Listing 12.08 (Personality and Impulse – Control Disorders). (R. 62.) He opined that under the "A" criteria of the listing, a medically determinable impairment was present but that it did not precisely satisfy the diagnostic criteria for Listing 12.08. (R. 62.) He further opined that under the "B" criteria of the listing, the evidence was insufficient to reach a conclusion as to Floyd's capabilities under the criteria. (R. 62.) Dr. Estock noted that Floyd did not allege any mental health issues on her application. (R. 62) He also noted that, prior to November 2015, Floyd reported "that she is able to understand instructions and said that with her age her memory is just not as sharp as it used to be." (R. 62.) Dr. Estock further noted that Floyd denied (1) being under a health care provider, (2) taking any medications, (3) being under the care of a mental health provider, (4) any psychiatric hospitalizations, and (5) taking any psychiatric medications. (R. 62.)

Dr. Robert Storjohann, Ph.D. ("Dr. Storjohann"), a consulting psychologist, completed a psychological evaluation of Floyd, dated April 30, 2020. (R. 554.) He noted that Floyd completed seventh grade and she reported receiving special education assistance during most of her schooling. (R. 554.) Dr. Storjohann administered the Wechsler Adult Intelligence Scale – Fourth Edition which yielded a full-scale IQ score of 61. (R. 557.) He noted that Floyd's score "place her verbal comprehension skills in the extremely low range,

her perceptual reasoning skills in the borderline range, her auditory working memory in the borderline range, her processing speed in the extremely low range, and her overall abilities in the extremely low range." (R. 557.) He explained that "these results are indicative of a mild intellectual disability." (R. 557.) Dr. Storjohann commented that Floyd "put forth good effort" during the testing and the "results appear to represent an accurate appraisal of her current abilities." (R. 556.) He diagnosed Floyd with mild intellectual disability with alcohol use disorder, in remission. (R. 557.) Dr. Storjohann opined, in pertinent part, the following:

> The prognosis for the coming 6 to 12 months is considered to be quite poor due to her intellectual limitations. Her history, in conjunction with the present test results, indicates that her intellectual limitations have been present since she was a child. Based on the results of this evaluation, Ms. Floyd has marked deficits in her ability to understand, carry out, and remember instructions in a work setting[;] . . . marked deficits in her ability to respond appropriately to supervision, coworkers, and work pressures in a work setting[;] . . . marked deficits in her ability to concentrate and maintain pace in a work setting[;] . . .[and] marked deficits in her ability to adapt to changes in a work setting. . . .

(R. 557.)

The ALJ found that Floyd did not have a severe impairment from April 1, 2014, through June 30, 2015, and denied her DIB claim at step two of the sequential evaluation process. (R. 14.) The ALJ considered Dr. Estock's opinion that the record contained insufficient evidence for Floyd's DIB claim but concluded the opinion was not persuasive because it referenced the existing medical evidence prior to June 30, 2015, including objective medical findings. (R. 14.) The ALJ did not address the opinion of Dr. Storjohann or Floyd's IQ score in the discussion of Floyd's DIB claim.
13

Here, the ALJ clearly erred. The ALJ did not consider Floyd's IQ score in her discussion of the DIB claim. Indeed, the discussion of Floyd's DIB claim in the hearing decision is devoid of any mention of her intellectual disability, full-scale IQ score, and her testimony that she was enrolled in special education classes in school. The ALJ's discussion is simply insufficient pursuant to the applicable law. The ALJ did not address the rebuttable presumption that applies in this Circuit due to Floyd's low IQ score. Dr. Storjohann found deficits in Floyd's function and objective findings of mental limitations although his examination and findings were outside of the relevant time period. Under the applicable presumption, Floyd's intellectual functioning test results from the relevant time period (which ended June 30, 2015) would have been the same as the test results five years later when Dr. Storjohann conducted his evaluation. This is supported by the notation made during a regular medication examination a year prior that Floyd had below average intelligence. Nothing in the record reflects an incident in which Floyd suddenly became intellectually disabled. *See Durham*, 34 F. Supp. 2d at 1381. Accordingly, the ALJ erred by ignoring Floyd's low IQ score in relation to her DIB claim.

The Court takes a moment to address the Commissioner's disingenuous argument that since Floyd's mild intellectual disability was not alleged at the time of her application, the ALJ did not have to consider it. (Doc. No. 17 at 7.) The Commissioner relies on *Street v. Barnhart*, 133 F. App'x 621 (11th Cir. 2005) for her argument. However, the facts in *Street* are distinguishable from the facts in this record.

In *Street*, the claimant assigned error to the ALJ for failing to consider his intellectual functioning by posing an inadequate hypothetical question to the VE. *Id.* at 627. The Circuit rejected the claimant's argument that the ALJ should have considered the evidence regarding the claimant's mental condition because the claimant "failed to present any evidence to the ALJ that would have put him on notice of a mental or intellectual limitation on [the claimant's] ability to function." *Id.* at 628. The record showed that a psychological evaluation of the claimant indicated he was experiencing depression which was secondary to his medical condition and test results indicated the claimant had borderline intellectual functioning. *Id.* at 624-25. The report concluded that the claimant was "experiencing depression and anxiety which are a result of his medical condition." *Id.* at 625. The ALJ, after summarizing all of the evidence, found the following:

> beginning on June 1, 1996, [the claimant] was disabled, but ceased to be disabled after the last day in February of 2001. The ALJ's specific findings were that, as of March 1, 2001, [the claimant] experienced medical improvement [following his bypass surgery] that rendered his impairments less severe than any of the listings contemplated by the regulations. Finally, the ALJ found that [the claimant] could not perform any of his past relevant work, but that he retained the residual functional capacity to perform other jobs existing in significant numbers in the nationally economy. This determination was based on the testimony of the VE and the hypothetical question posed to the VE . . . .

*Id.* at 627. The district court affirmed the decision of the ALJ and the claimant appealed. The Circuit reviewed the case on appeal and concluded that:

> (1) [the claimant] failed to allege a mental impairment in his application or testimony before the ALJ, (2) substantial evidence supported the ALJ's determination that [the claimant] was no longer disabled after March 1, 2001, and (3) the ALJ did not improperly ignore [the claimant's] depressive symptoms from 1998, *based as they were on a medical condition that had*

15

>*since been treated effectively*, and the lack of any testimony, record of treatment, or any other evidence of any kind suggesting a mental impairment.

*Id.* at 631 (emphasis added).

Although Floyd did not list her mental impairment on her application[7] nor mention it as a basis for her inability to work during her hearing testimony,[8] it is clear from the record that the ALJ was on notice of her mental impairment and the allegation that it was a basis for her disability. The ALJ raised the issue of special education classes during the hearing and elicited testimony from Floyd regarding her placement in special education classes during her schooling. (R. 38-39.) In response, Floyd testified that she was in special education classes during school and had informed the Social Security Administration of this fact. (R. 39.) In addition, the ALJ was on notice of Floyd's mental impairment due to the evidence in the record. The Disability Report from the Field Office indicates that Floyd was interviewed "face-to-face" by a disability specialist who noted that Floyd had difficulty with reading, understanding, and answering. (R. 242, 243.) The specialist also noted that Floyd "has problems hearing, had to repeat a lot of the questions and also didn't seem to understand a lot of the questions . . . Her brother . . . helped during the interview." (R. 243.) In addition, the record shows that Al Vester, M.D., ("Dr. Vester"), a consultative examiner for the Social Security Administration, examined Floyd on February 4, 2019, and opined that she was "significantly limited by her learning disability." (R. 441.) Dr. Vester also opined that Floyd would require a payee should she

---

[7] (R. 246.)

[8] (R. 40.)

16

receive a monetary benefit. (R. 441.) Due to Dr. Vester's opinion, in May 2019, Floyd's counsel requested the ALJ send Floyd for a psychological evaluation with IQ testing because her "[m]ental status in this case has never been fully evaluated." (R. 274.) This request was not addressed by the Social Security Administration, so Floyd's counsel referred her to Dr. Storjohann for psychological evaluation. (R. 554.) The evaluation by Dr. Storjohann was presented to the ALJ before the administrative hearing and was referenced by the ALJ during Floyd's hearing testimony. (R. 38, 554-557.) Further, unlike *Street*, there is nothing in the record that indicates Floyd's intellectual disability is tied to or based on a medical condition. Finally, the record clearly establishes that Floyd's mental impairment was before the ALJ as a basis for disability because the ALJ fully considered Floyd's mild intellectual functioning in relation to her SSI claim. (R. 16-20.) Accordingly, the Commissioner's argument misses the mark and fails to persuade the Court that remand is not warranted. For the reasons stated above, the Court finds reversible error and remands the case to the Commissioner for further consideration.

B.  Remaining Arguments

Because the case is being remanded to the Commissioner for further consideration, the Court need not address Floyd's remaining arguments. *See Jackson v. Bowen*, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam) (stating that where remand is required, it may be unnecessary to review other issues raised) (citations omitted); *see also McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 963 n.3 (11th Cir. 2015) (per curiam) (finding no need to analyze other issues when case must be reversed due to other dispositive errors). On remand, however, the Commissioner should reassess the entire record, providing sufficient

17

reasons and readily identifiable evidentiary support for her decision under the applicable law. *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (holding that, on remand, the ALJ must reassess the entire record) (citation omitted).

## VI. CONCLUSION

For the reasons stated, the Court finds that the decision of the Commissioner is not supported by the proper legal standards. Therefore, it is hereby

ORDERED that the decision of the Commissioner is REVERSED pursuant to sentence four of 42 U.S.C. § 405(g) and this matter is REMANDED for further proceedings consistent with this opinion.

A separate judgment will be issued.

DONE this 6th day of September, 2022.

/s/ Jerusha J. Adams
JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE